# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Scentsy, Inc.

      Plaintiff,

v.

Reshare Commerce, LLC,

      Defendant.

**Civil No. 12-CV-268 (RHK/SER)**

**<u>REPORT AND
RECOMMENDATION</u>**

---

    Aaron A. Myers, Felicia J. Boyd, and William Earl Manske, Esqs., Barnes & Thornburg LLP,  225 South Sixth Street, Suite 2800, Minneapolis, Minnesota 55402 for Plaintiff.

    Ryan T. McFarland, Esq., Scentsy Inc., 2701 East Pine Avenue, Meridian, Idaho 83642 for Plaintiff.

    Dwight G. Rabuse and Erin E. Neils, Esqs., 527 Marquette Avenue South, Suite 1530, Minneapolis, Minnesota 55402 for Defendant.

---

STEVEN E. RAU, United States Magistrate Judge

    The above-captioned case comes before the undersigned on Defendant Reshare Commerce, LLP's ("Reshare") Motion for Summary Judgment ("Reshare's Motion") [Doc. No. 39] and Plaintiff Scentsy, Inc.'s ("Scentsy") Motion for Summary Judgment ("Scentsy's Motion") [Doc. No. 44].  The parties' cross-motions for summary judgment have been referred by District Judge Richard Kyle to the undersigned for recommended dispositions.  (Order of Reference Dated June 27, 2013) [Doc. No. 56].  For the reasons stated below, the Court recommends granting Reshare's Motion and denying Scentsy's Motion.

## I.    BACKGROUND

    Scentsy's Complaint alleges seven counts against Reshare: (1) trademark infringement in violation of the Lanham Act; (2) implied endorsement in violation of the Lanham Act; (3)

trademark infringement in violation of Minnesota common law; (4) breach of contract; (5) violation of Minnesota Deceptive Trade Practices Act; (6) fraudulent misrepresentation; and (7) negligent misrepresentation. *See* (Compl.) [Doc. No. 1]. Scentsy seeks a host of damages including, for example, its attorneys' fees, delivery and destruction of anything in Reshare's possession bearing the Scentsy mark, trebled monetary damages, and a permanent injunction enjoining Reshare from infringing Scentsy's trademark and other behavior. (*Id.* at 8–10). Scentsy now moves the Court for summary judgment granting all of its claims. (Scentsy's Mot.).[1]

Reshare moves the Court for summary judgment dismissing Scentsy's claims based primarily on the absence of any injury resulting from Scentsy's incorrect identification on Reshare's website as a licensee. (Reshare's Mot. at 1); *see* (Reshare's Mem. of Law in Supp. of Mot. for Summary Judgment, "Reshare's Mem. in Supp.") [Doc. No. 42].

## A.    The Parties Are Not Competitors

Scentsy is an Idaho-based company utilizing a direct sales business model to sell its home fragrance and wickless candle products. (Scentsy's Mem. in Supp. of its Mot. for Summary Judgment, "Scentsy's Mem. in Supp.") [Doc. No. 46 at 2]. Scentsy is a fast-growing privately held company with several hundred million dollars in sales. (*Id.*); (Reshare's Mem. in Supp. at 3). Scentsy works hard to maintain its reputation in the direct sales industry. (Scentsy's Mem. in Supp. at 2). Scentsy aggressively protects its intellectual property and does not license its name for third-party use typically. (*Id.*).

---

[1]    Although Scentsy filed for summary judgment, not partial summary judgment, it fails to argue in its supporting memoranda that summary judgment is warranted on its claims for fraudulent and negligent misrepresentation. *See* (Scentsy's Mem. in Supp.); (Scentsy's Reply in Supp. of Mot. for Summary Judgment, "Scentsy's Reply in Support"). Because the Court finds it lacks jurisdiction to hear the fraudulent and negligent misrepresentation claims, whether Scentsy actually argues for complete or partial summary judgment is non-determinative.

Reshare is a Minnesota limited liability software company.  (*Id.* at 3); (Reshare's Mem. in Supp. at 2).  Reshare holds U.S. Patent No. 6,594,641 (the "'641 Patent"), and is a non-practicing entity.  (Reshare's Mem. in Supp. at 2).  Reshare has filed and settled many patent infringement lawsuits based on the '641 Patent.  (*Id.*).  Settlements traditionally use a template agreement that includes a license to the '641 Patent along with a grant of permission to Reshare to publicize the alleged infringer as a licensee.  (*Id.* at 2–3).  A "significant portion" of the revenue from licensing the '641 Patent comes from licenses entered into to settle patent infringement suits.  (Scentsy's Mem. in Supp. at 3).  Currently, Reshare is in a dire financial situation; it owes back taxes to the IRS and has been unable to pay its employees.  (Reshare's Mem. in Supp. at 9–10).

**B.      Reshare's 2010 Patent Infringement Action Against Scentsy**

In  2010,  Reshare  sued  Scentsy,  alleging  infringement  of  Reshare's  '641 Patent. (Scentsy's Mem. in Supp. at 3); (Reshare's Mem. in Supp. at 3); *Reshare Commerce, LLC v. Close to My Heart*, No. 10-cv-01936 (ADM-TNL) (D. Minn.).  Reshare and Scentsy settled the lawsuit in a confidential settlement agreement (the "Settlement Agreement") and Reshare voluntarily dismissed its infringement suit on August 15, 2011.  *See Reshare Commerce, LLC v. Close to My Heart*, No. 10-cv-1936 (ADM-TNL) (D. Minn. Aug. 15, 2011) [Doc. No. 122].

During settlement negotiations, "Scenty's counsel expressly advised Reshare's counsel that the settlement would not, under any circumstances, include a license agreement."  (Scentsy's Mem. in Supp. at 4).  Scentsy's insistence on the lack of a license agreement deviated from Reshare's standard settlement agreement.  (Reshare's Mem. in Supp. at 2–3).  The Settlement Agreement, accordingly, does not grant any licenses.  (*Id.* at 3); (Scentsy's Mem. in Supp. at 4–5).  Section 2.2 of the Settlement Agreement, the non-licensure provision, provides "[t]here are

no licenses granted expressly or by implication." (Settlement Agreement with Scentsy, "Settlement Agreement," Ex. A, Attached to the Aff. of Erin Neils) [Doc. No. 43-2].[2] Section 8.1 of the Settlement Agreement, the confidentiality provision, contains the confidentiality agreement and provides that the parties will treat the Settlement Agreement as confidential and remain vigilant about not making disclosures. (*Id.*). Scentsy paid Reshare $48,000 under the Settlement Agreement. (Scentsy's Mem. in Supp. at 5).

C.     **Parties' Conduct After the Settlement Agreement**

After the Settlement Agreement's execution in August 2011, Reshare listed Scentsy as a licensee on Reshare's website. (Scentsy's Mem. in Supp. at 6); (Reshare's Mem. in Supp. at 3). The licensee list used a hotlink on "Scentsy" that connected directly to Scentsy's website. (Scentsy's Mem. in Supp. at 6). Scentsy's outside counsel brought the incorrect listing to Scentsy's attention in October 2011, not long after the execution of the Settlement Agreement. (Reshare's Mem. in Supp. at 4). Scentsy waited, however, until February 2012 to file the current action. (Compl.). Scentsy made no effort to contact Reshare to request removal of Scentsy's name from Reshare's website. (Reshare's Mem. in Supp. at 4). Reshare, thus, did not learn of its incorrect listing until Scentsy filed the instant suit. (Reshare's Mem. in Supp. at 4). Upon learning of its mistake, Reshare removed Scentsy's name quickly from the licensee list on its website. (*Id.*).

Scentsy does not know of anyone, other than its outside counsel, that saw its name incorrectly listed on Reshare's website. (*Id.* at 6). Reshare's managing member, Adam Southam ("Southam"), explained that no one ever contacted him about Scentsy's listing on Reshare's website. (*Id.* at 4–6). Scentsy has not shown any lost sales or financial damage due to Reshare's

---

[2]     The full text of the Settlement Agreement remains under seal as filed by the parties per the Court's recommendation below in Section III.C.

alleged breach. (*Id.*). Nor has Scentsy affirmatively identified anyone contacting it about its listing as Reshare's licensee. (*Id.*).

The parties disagree over the culpability of Scentsy's listing as a licensee on Reshare's website. Reshare characterizes the listing as a mistake that occurred when Southam inadvertently included Scentsy on a list of new licensees he was adding to the website. (*Id.* at 3). Scentsy alleges Reshare's inclusion of a hotlink linking directly to Scentsy's website negates Reshare's argument that the listing was a mistake. (Scentsy's Mem. in Supp. at 11–12). In the end, there are simply allegations and nothing more about each parties supposed motive—for a trial, or for that matter any further Court involvement, more is needed.

Both parties now move the Court for summary judgment in their favor. *See* (Scentsy's Mot.); (Reshare's Mot.). The parties' Motions have been fully briefed, and an oral argument was held on July 23, 2013, thus, the Motions are ripe for disposition.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court reviewing a motion for summary judgment views the facts in the light most favorable to the nonmoving party and makes all reasonable inferences in favor of the nonmoving party. *Ludwig v. Anderson*, 54 F.3d 465, 470 (8th Cir. 1995) (citation omitted). A genuine issue is one where the evidence "is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party." *Schilf v. Eli Lilly & Co.*, 687 F.3d 947, 949 (8th Cir. 2012) (citation omitted). A material fact is one that could affect the suit's outcome under the applicable, substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is the moving party's burden to show that the material facts are not in

dispute. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (*en banc*). The nonmoving party must put forth specific evidence creating a genuine issue of material fact and cannot merely make allegations or denials. Fed. R. Civ. P. 56(c)(1)(A); *Wood v. SatCom Mktg., LLC*, 705 F.3d 823, 828 (8th Cir. 2013) (citation omitted). On cross-motions for summary judgment, the same general standards apply. *Jackson Nat. Life Ins. Co. v. Catlin Specialty Ins. Co.*, 12-cv-1406 (RHK/FLN), 2013 WL 4519382, at *2 (D. Minn. Aug. 26, 2013). When considering Reshare's Motion, the Court views the evidence in a light most favorable to Scentsy, and when considering Scentsy's Motion, it views the evidence in a light most favorable to Reshare.

## III. ANALYSIS

### A. Alleged Lanham Act Violations

#### 1. Count 1: Trademark Infringement

The Lanham Act § 1114 provides:

> (a) use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
> (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,
>
> shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114.

To succeed on a Lanham Act claim of trademark infringement both "(1) ownership of a valid trademark; and (2) a likelihood of confusion between the registered mark and the alleged infringing use by the defendant" must be established. 15 U.S.C. § 1114(1); *Davis v. Walt Disney Co.*, 393 F. Supp. 2d 839, 843 (D. Minn. 2005) *aff'd*, 430 F.3d 901 (8th Cir. 2005) (citation omitted). The parties do not dispute that Scentsy holds a valid trademark. (Reshare's Mem. in Opp'n, "Reshare's Opp'n") [Doc. No. 53 at 6]. The likelihood of confusion, thus, is the only factor in issue.

### a.      Likelihood of Confusion

Courts consider the following in determining likelihood of confusion: "(1) the strength of the trademarks; (2) the similarity between the plaintiff's and defendant's marks; (3) the competitive proximities of the parties' products; (4) the alleged infringer's intent to confuse the public; (5) the evidence of actual confusion; and (6) the degree of care reasonably expected of potential customers." *Davis*, 393 F. Supp. at 845 (citing *SquirtCo. v. Seven-Up Co.,* 628 F.2d 1086, 1091 (8th Cir. 1980)). No factor alone is dispositive. *Rainbow Play Sys., Inc. v. GroundScape Technologies, LLC.*, 364 F. Supp. 2d 1026, 1035 (D. Minn. 2005) (MDJ/JGL) (citation omitted). The unauthorized use of another's mark on a website does not establish automatically that customers were confused or were even likely to be confused. *See St. Croix Printing Equip., Inc. v. Debbie Sexton*, 578 F. Supp. 2d 1195, 1199 (D. Minn. 2008) (PAM/JSM) (explaining that unauthorized use of a logo and trademark on a website does not establish a claim for trademark infringement sufficient to survive summary judgment when no evidence was presented that customers were confused or were likely to be confused).

### i.      Actual confusion

"The Eighth Circuit has noted that evidence of actual confusion 'is perhaps the most effective way to prove a likelihood of confusion.'" *Rainbow Play Sys., Inc.*, 364 F. Supp. 2d at 1035 (quoting *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 602–03 (8th Cir. 1999)). Here, no evidence of actual confusion exists whatsoever. In fact, the only person Scentsy can identify as actually seeing the incorrect website listing is Scentsy's own outside counsel. (Reshare's Mem. in Supp. at 4). Neither Reshare nor Scentsy were ever contacted (outside of Scenty's own counsel alerting Scentsy) regarding the incorrect listing of Scentsy on Reshare's website. (Reshare's Opp'n at 8–9). Due to the lack of any evidence of actual confusion, this factor weighs strongly in favor of a finding of no likelihood of confusion.

### ii. Similarity Between the Marks

Because Reshare used Scentsy's exact mark, this factor favors a finding of a likelihood of confusion.

### iii. Competitive Proximities

Reshare and Scentsy are not competitors, but the Court does not find this factor to be relevant in the likelihood of confusion analysis. It will, therefore, be treated as neutral.

### iv. Alleged Infringer's Intent

"Although proof of bad intent is not required for success in a trademark infringement or unfair competition claim, the absence of such intent is a factor to be considered." *Davis*, 430 F.3d at 904 (citation omitted). Here, Reshare presented Southam's testimony that the listing of Scentsy as a licensee was a mistake. (Reshare's Mem. in Supp. at 3–4, 6) (citing Southam's deposition testimony that he was adding new licensees to the list on Reshare's website and inadvertently added Scentsy). In addition, as soon as Reshare learned of its mistake, by the filing

of this lawsuit, Reshare corrected it, further indicating the listing was a mistake. (*Id.* at 4). No evidence has been presented contradicting Reshare's evidence. Scentsy states:

> Reshare admits that it controls access to and the content displayed on its website. Reshare's licensing scheme is aided by each additional licensee that it signs up. . . Reshare's efforts to notify third parties that Scentsy was its licensee suggests Reshare's intentional use of the Scentsy name to further its business aims.

(Scentsy's Mem. in Supp. at 15). Scentsy's statement does not constitute evidence that Reshare intentionally listed Scentsy incorrectly as a licensee, it is merely supposition. Scentsy's bare allegation does not overcome Reshare's evidence that the listing was a mistake. This factor, thus, favors a finding of no likelihood of confusion.

## v. Endorsement

Scentsy argues that the Court should take into account the unique nature of this case in its likelihood of confusion analysis: the fact that Reshare allegedly used Scentsy's name to imply endorsement for Reshare's patented technology. (*Id.* at 16). "The Lanham Act does prohibit the unauthorized use of a mark in commerce if it would cause confusion as to whether there is an 'affiliation, connection, or association' with another person.'" *Davis*, 430 F. 3d at 905 (citing 15 U.S.C. § 1125(a)(1)(A)). When there has been willful use of another's mark in violation of a trademark agreement to imply approval of the user's product, there has been a use that is likely to cause confusion and to deceive others as to the mark holder's approval of the products. *Masters v. UHS of Delaware, Inc.*, 631 F.3d 464, 474 (8th Cir. 2011) *cert. denied*, 131 S. Ct. 2920 (2011). Here, however, Scentsy has not shown any evidence that the listing of Scentsy on Reshare's website was anything other than a mistake. Scentsy's argument is further weakened by the fact that it waited four months (without so much as calling Reshare) to notify Reshare of the mistake and then accomplished notification by filing this suit. (Reshare's Mem. in Supp. at 3–4).

Scentsy cites in its favor, *Famous Horse v. 5ᵗʰ Ave. Photo* where the defendant "used the [plaintiff's] trademark to advertise that [plaintiff] was a satisfied customer of [defendant's] services." *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 109 (2d Cir. 2010) (internal citation omitted); (Scentsy's Mem. in Supp. at 11); (Scentsy's Mem. in Opp'n to Reshare's Mot. "Scentsy's Opp'n") [Doc. No. 54 at 9]. There the Second Circuit held: "[t]he public's belief that the mark's owner *sponsored or otherwise approved* the use of the trademark satisfies the confusion requirement." *Id.* (citation omitted) (emphasis in original).

This case is distinguishable because here, there is no evidence that Reshare used Scentsy's trademark in any advertisements or promotions of its other settlement agreements. (Reshare's Mem. in Supp. at 6–7). In addition, Scentsy has pointed to no evidence of its customers or its fellow businesses seeing its name on Reshare's website. (*Id.* at 4–6). Scentsy has not shown that the public had any knowledge of its listing let alone that the public thought Scentsy supported Reshare's efforts in licensing its patent. Scentsy argues the "presence of a large, successful company such as Scentsy on that list [of patent licensees] likely influences the [other] entities' decision as to whether or not to pay Reshare the requested licensing fee or enter litigation." (Scentsy's Mem. in Supp. at 17–18). Scentsy, however, provides no evidence to support its assertion. Additionally, Scentsy does not provide the Court with any evidence linking Reshare's licensing scheme to Scentsy's listing on Reshare's site. In fact, Scentsy has not presented any evidence to contradict Reshare's argument that the listing of Scentsy as a licensee was a mistake. In addition, Reshare notes that since its settlement with Scentsy, it has been "far from profitable. . . . Reshare does not have the funds to pay its employees. . . [and] [a]ny money Reshare receives is subject to an IRS levy to pay back taxes." (Reshare's Mem. in Supp. at 9–10). Reshare also presented evidence that it never, other than the incorrect listing, identified

Scentsy as a licensee, which weakens Scenty's argument that Reshare used Scentsy to get licensees even more.

Finally, Scentsy's suggestion that the use of a hyperlink indicates endorsement is not persuasive. *See* (Scentsy's Mem. in Supp. at 11). In *Courtenay Commc'ns Corp. v. Hall*, the hyperlink connection was to an endorsements page. 334 F.3d 210, 214 n.1 (2d Cir. 2003). In addition, the *Courtenay* court, in a footnote, notes that use of a hyperlink on an endorsement page "**suggests** affiliation, sponsorship, or endorsement." *Id.* (emphasis added). This argument does not overcome the lack of any evidence showing that the public thought the incorrect listing of Scentsy as a licensee indicated its endorsement of Reshare's licensing scheme.

Because the record is devoid of evidence showing that there were any instances of actual confusion resulting from Scentsy being listed as a licensee on Reshare's website, any evidence that Reshare's listing of Scentsy as a licensee was anything other than a mistake, or any evidence that the incorrect listing caused anyone to believe that Scentsy endorsed Reshare's licensing efforts, Scentsy has not established a likelihood of confusion for trademark infringement under the Lanham Act. On the other hand, because the record contains evidence that there were no instances of actual confusion, that Reshare's listing was a mistake that was corrected quickly upon its discovery, and that Reshare did not use Scentsy's name for promotion purposes, Reshare has provided the Court with sufficient evidence showing there was no likelihood of confusion. Reshare, thus, is entitled to summary judgment in its favor on the Lanham Act trademark infringement claim.

### 2. Count 2: Implied Endorsement

The Lanham Act holds civilly liable:

(1) Any person who, on or in connection with any goods or services, or any
    container for goods, uses in commerce any word, term, name, symbol, or

device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125. The same likelihood of confusion standard applies for implied endorsement and trademark infringement claims under the Lanham Act. *See Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C.*, 393 F.3d 755, 759 (8th Cir. 2005); *Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 504 (8th Cir. 1987); *Amusemints, LLC v. Webb Candy Co.*, 11-cv-3210 (DWF/AJB), 2012 WL 2359655, *2 (D. Minn. June 18, 2012) (citations omitted). As explained above, Reshare is entitled to summary judgment on Scentsy's Lanham Act trademark infringement claim because a likelihood of confusion does not exist. Since Scentsy failed to establish a likelihood of confusion under its Lanham Act trademark infringement claim, it is also not entitled to summary judgment on its implied endorsement claim. Reshare, thus, is entitled to summary judgment on the false endorsement claims and Scentsy is not entitled to summary judgment.[3]

---

[3]    Scentsy argues because Reshare's listing of Scentsy on Reshare's website was literally false, the Court need not consider whether there was actual confusion. (Scentsy's Mem. in Supp. at 16–17). When an advertisement is literally false, a Court **may** grant relief on this finding and "need not consider whether the consuming public was actually misled by the advertisement's falsity." *LensCrafters, Inc. v. Vision World, Inc.*, 943 F. Supp. 1481, 1488 (D. Minn. 1996) (MJD/RLE) (citations omitted) (emphasis added). The Court has already found, however, that there was no evidence showing any actual confusion or even a likelihood of confusion from Scentsy's listing. In addition, although the Court does not address the elements of an implied

### b.      Lanham Act Damages[4]

Because Scentsy cannot establish a Lanham Act claim due to the lack of a likelihood of confusion, it is not entitled to any of the damages it seeks under the Lanham Act. *See* 15 U.S.C. § 1117(a).

## B.      Resultant Jurisdictional Problems

Federal Rule of Civil Procedure 12(h)(3) requires that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." It is the Court's obligation to assess its jurisdiction *sua sponte* at any time it appears there is no jurisdiction. *Carlson Holdings, Inc. v. NAFCO Ins. Co.*, 205 F. Supp. 2d 1069, 1073 (D. Minn. 2001) (citation omitted). In light of the Court's recommendation that Reshare is entitled to summary judgment on Scentsy's only federal law claims, its Lanham Act claims, the Court must consider whether Scentsy's state law claims have another basis for subject matter jurisdiction.[5]

### 1.      Diversity Jurisdiction

Paragraph 5.1 of the Settlement Agreement provides:

---

endorsement claim outside of confusion, the Court notes Scentsy would also have to establish the materiality of the false statement in consumers' purchasing decisions and that the false statement was likely to or did cause Scentsy harm. The Court does not believe, Scentsy can establish either factor based on the evidence in the record, much less both.

[4]      Even if Scentsy had established Lanham Act claims any Lanham Act damages awarded to it would be subject to "the principles of equity." 15 U.S.C. § 1117(a). Here, principles of equity militate against granting Scentsy any damages under the Lanham Act. The conduct at the heart of this suit is the unauthorized and incorrect listing of Scentsy as a licensee of Reshare on Reshare's website has been shown to have been a mistake. Moreover, upon discovery of the mistake, Reshare corrected its mistake. Scentsy filed this lawsuit without ever talking to Reshare about having the incorrect listing fixed. For several months, Scentsy waited, knowing the listing was out there and arguably exacerbating its imagined damages. Adding to the equitable considerations, Reshare is in a dire financial situation, not even able to pay its employees and any money it receives will first be paid to the IRS for back taxes.

[5]      Scentsy's remaining state law claims include: Minnesota common law trademark infringement (Count 3); breach of contract (Count 4); violation of Minnesota Deceptive Trade Practices Act (Count 5); fraudulent misrepresentation (Count 6); and negligent misrepresentation (Count 7) (collectively, "State Law Claims").

> Reshare shall not be responsible for any consequential, indirect, incidental, special, exemplary or punitive damages of any kind or description, whether foreseeable or unforeseeable, (including claims for loss interruption in use or unavailability of systems or data, loss of goodwill, loss of profits, stoppage of other work or impairment of other assets) arising out of or relating to this Agreement (whether with respect to breach of contract, breach of warranty, misrepresentation, negligence, strict liability in tort or otherwise), except to the extent such damages cannot be excluded under applicable law.

The Settlement Agreement goes on to provide, "[i]n **no event** shall Reshare's total liability to Scentsy **in any action**, whether in contract or tort, **exceed the total amount actually paid** to Reshare by Scentsy pursuant to this Agreement." (emphasis added). The maximum damages award Scentsy would be entitled to in this suit is limited to $48,000, the amount paid by Scentsy under the Settlement Agreement.

Even if Scentsy could establish, which the Court believes highly unlikely, it was entitled to $48,000 for its State Law Claims, this does not meet the excess of $75,000 required to establish diversity jurisdiction. *See* 28 U.S.C. § 1332.

### 2. Supplemental Jurisdiction

Title 28 U.S.C. § 1367(a) provides "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III . . . ." Section 1367 also provides that "district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). When deciding whether to exercise supplemental jurisdiction after all the claims with original jurisdiction have been dismissed, "the Court is to consider 'the stage of the litigation; the difficulty of the state claim; the amount of time and energy necessary for the claim's resolution; and the availability of a state forum.'" *Goddard, Inc. v. Henrys Foods, Inc.*,

291 F. Supp. 2d 1021, 1051 (D. Minn. 2003) (quoting *Minnesota Ass'n of Nurse Anesthetists v. Unity Hosp.*, 5 F. Supp. 2d 694, 711 (D. Minn. 1998)).  Generally, "'where all federal law claims are eliminated before trial, the balance of factors to be considered' will weigh against the exercise of supplemental jurisdiction." *Id.* (quoting *Edwards v. Widnall*, 17 F. Supp. 2d 1038, 1043 (D. Minn. 1998)).

Here, Scentsy's only claims over which the Court has original jurisdiction (the Lanham Act claims) are recommended for summary judgment in Reshare's favor.  Based on the considerable resources the Court has already utilized in this case, the late stage of the litigation, and the Court's ability to deal with the state law claims on the merits on the pending cross-motions for summary judgment, the Court finds it appropriate to exercise supplemental jurisdiction over Scentsy's state law claims.  *See, e.g.*, *id.* at 1051–52 (exercising supplemental jurisdiction over state law claims after all claims with original jurisdiction were dismissed when the court had addressed a preliminary injunction and decided motions to enforce settlement and partial summary judgment and the trial-ready date was within a week).

### C.    State Law Claims

#### 1.    Count Three: Common Law Trademark Infringement

Scentsy alleges that Reshare's conduct constitutes unfair competition and infringement of Scentsy's trademarks and seeks an injunction preventing Reshare from using its mark and damages.  (Compl. ¶¶ 38–41).  Trademark infringement claims under Minnesota law mirror claims under the Lanham Act and require the same analysis.  *Edina Realty, Inc. v. TheMLSonline.com*, No. 04-cv-4371(JRT-FLN), 2006 WL 737064, at *3 n.2 (D. Minn. Mar. 20, 2006) (citing *Daimlerchrysler AG v. Bloom*, 315 F.3d 932, 936, n.3 (8th Cir.2003)).  Because Scentsy has not established a trademark infringement claim under the Lanham Act, it is not

entitled to summary judgment on its claim for trademark infringement under Minnesota law. Because Reshare, on the other hand, has provided sufficient evidence that there was no likelihood of confusion, it is entitled to summary judgment on the claim for trademark infringement under Minnesota law.

## 2.    Count Five: Deceptive Trade Practices Act

Scentsy alleges that Reshare's use of Scentsy's trademark violates the Minnesota Deceptive Trade Practices Act ("DTPA") because it is likely to cause confusion and/or deceive the public into believing Scentsy is affiliated with or sponsors Reshare's activities.  (Compl. ¶ 47).  Scentsy seeks damages including "the loss of sales and profits Scentsy would have made but for Defendant's acts[,]" an injunction, and attorneys' fees.  (*Id.* ¶¶ 48–51).

"A claim under Minnesota Statute § 325D.44 requires the same analysis as does the federal Lanham Act."  *See, e.g.*, *i-Sys., Inc. v. Softwares, Inc.*, 02-cv-1951 (JRT/FLN), 2004 WL 742082, *15 (D. Minn. Mar. 29, 2004) (citing *Group Health Plan, Inc. v. Philip Morris, Inc.*, 68 F. Supp. 2d 1064, 1069–70 (D. Minn. 1999)); *Amusemints, LLC v. Webb Candy Co.*, 11-cv-3210 (DWF/AJB), 2012 WL 2359655, at *2 (D. Minn. June 18, 2012) (citation omitted).  To prevail on a DTPA claim, a plaintiff "must show likelihood of confusion."  *Mars Musical Adventures, Inc. v. Mars, Inc.*, 159 F. Supp. 2d 1146, 1153 (D. Minn. 2001).

Because the Court has found: (1) Scentsy failed to establish a likelihood of confusion and (2) Reshare has established the non-existence of a likelihood of confusion, Scentsy is not entitled to summary judgment on its DTPA claim.  Reshare is entitled to summary judgment on this claim because it has provided sufficient evidence that there was no likelihood of confusion.

### 3.    Counts Six and Seven: Misrepresentation[6]

Scentsy alleges Reshare "fraudulently respresent[ed] that Scentsy is a 'Licensee' of its software in an attempt to trade on the goodwill of Scentsy's trademark and misrepresent Scentsy's relationship with Defendant." (Compl. ¶ 53). Scentsy characterizes Reshare's conduct as intentional and being made "without any reasonable ground for believing in its truth." (*Id.* ¶ 54). Scentsy claims it is entitled to damages. (*Id.* ¶ 56).

For success on a fraudulent misrepresentation claim, a plaintiff must show:

> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffer[ed] pecuniary damage as a result of the reliance.

*Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 984–85 (8th Cir. 2008) (citations omitted).

Scentsy makes a very similar allegation for negligent misrepresentation as it does for fraudulent misrepresentation. (Compl. ¶ 58). Scentsy again alleges that it is entitled to damages for Reshare's conduct which it categorizes as negligent misrepresentation. (Comp. ¶ 61).

For success on a negligent misrepresentation claim, a plaintiff must show:

> [T]he defendant, by its failure to use reasonable care, made a false representation or failed to communicate information that it knew or should have discovered; the misrepresentation occurred in the course of the defendant's business or in a transaction in which the defendant had a pecuniary interest; the defendant intended that the plaintiff rely on the misrepresentation in the plaintiff's business transactions; and the plaintiff reasonably relied on the misrepresentation and suffered harm as a result.

*Noble Sys. Corp.*, 543 F.3d at 985 (citation omitted).

---

[6]    It is unclear whether Scentsy moves for summary judgment on the misrepresentation claims. *See* note 1, *supra*.

"In both intentional and negligent misrepresentation claims, the plaintiff must prove some relationship that is sufficient to create a duty owed by the defendant to the plaintiff, that the plaintiff relied on the defendant's misrepresentation, and that it thereby suffered harm. *Id.* (citing *L & H Airco, Inc. v. Rapistan Corp.,* 446 N.W.2d 372, 380 (Minn. 1989); *Flynn v. Am. Home Prods. Corp.,* 627 N.W.2d 342, 349–50 (Minn. Ct. App. 2001)).

The record contains no evidence showing that Scentsy relied on Reshare's alleged misrepresentation, the listing of Scentsy as a licensee on Reshare's website. In addition, Scentsy has failed to show that it suffered any damage from the incorrect listing, as discussed above. The record does contain evidence that Scentsy has suffered no lost profits, neither party was ever notified or questioned (except Scentsy's outside counsel notifying Scentsy) of the incorrect listing, and Scentsy's name was quickly removed from Reshare's website upon Reshare's learning of its mistake at the commencement of this suit. (Reshare's Mem. in Supp. at 4). Thus, Reshare has presented, and Scentsy has not combatted, evidence sufficient to show there is no genuine dispute that Scentsy did not rely on or suffered damages from the alleged misrepresentation, both essential elements of the misrepresentations. The Court, therefore, finds Reshare is entitled to summary judgment in its favor on both the fraudulent and negligent misrepresentation claims.

### D.    Sealing

Scentsy filed its Memorandum in Support of its Motion for Summary Judgment [Doc. No. 46], Declaration of Mark Stanstny in Support of Scentsy's Motion for Summary Judgment [Doc. No. 47], Exhibits A, C, D, F, and G to the Declaration of Felicia Boyd in Support of Scentsy's Motion for Summary Judgment [Doc. No. 48], Scentsy's Response to Reshare's Motion for Summary Judgment [Doc. No. 54], and Scentsy's Reply in Support of its Motion for

Summary Judgment [Doc. No. 61] under seal. Reshare filed Exhibits A, B, C, and E to the

Affidavit of Erin E. Neils in Support of its Motion under seal. (Aff. of Erin E. Neils ("Neils

Aff.")) [Doc. No. 43]. The parties' stipulated protective order states:

> The parties understand that designation by a party, including a third party, of a document as "Confidential" (including documents designated as "Confidential-Attorneys' Eyes Only") pursuant to this Protective Order cannot be used as the sole basis for filing the document under seal in connection with a nondispositive, dispositive or trial-related motion.

(Protective Order) [Doc. No. 21 ¶ 15]. The parties agreed to comply with "the Electronic Case

Filing Procedures for the District of Minnesota and the Court's governing pretrial scheduling

order addressing the service and delivery of 'Confidential' materials on a party opponent and the

Court." (*Id.*). The Court limits sealing to "those portions of a party's submission which

otherwise meet the requirements of protection from public filing under the attorney-client

privilege, work product doctrine, or the standards articulated in Fed. R. Civ. P. 26(c)(1)."

(Pretrial Scheduling Order) [Doc. No. 12 at 4]. Federal Rule of Civil Procedure 26 provides that

a court "may, for good cause, issue an order to protect a party or person from annoyance,

embarrassment, oppression, or undue burden or expense, including . . . that a trade secret or other

confidential research, development, or commercial information not be revealed or be revealed

only in a designated way." Fed. R. Civ. P. 26(c).

"Where the common-law right of access is implicated, the court must consider . . .

[whether] sealing a judicial record would interfere with the interests served by the common-law

right of access and balance that interference against the salutary interests served by maintaining

confidentiality of the information sought to be sealed." *IDT Corp. v. eBay*, 709 F.3d 1220, 1223

(8th Cir. 2013). "[T]he decision as to access is one best left to the sound discretion of the trial

court . . . in light of the relevant facts and circumstances of the particular case." *Id.* (citations

omitted).  Because the Court has supervisory power over its records, the decision to seal is in its discretion.  *Cardiac Pacemakers, Inc. v. Aspen II Holding Co., Inc.*, 04-cv-4048 (DWF/FLN), 2006 WL 3079410, at *4 (D. Minn. Oct. 24, 2006) (citation omitted).  Concerning briefing, especially at the summary judgment stage, the right of public access to the briefs and supporting documents at issue is strong.  *Id.* (citing *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982)) ("[D]ocuments used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons.")).  There is also a question whether the Protective Order, meant to facilitate discovery, extends to the summary judgment stage.  *Id.* (citing *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 252 (4th Cir.1988) ("[W]e question whether the [Protective] Order remained in effect over these documents once they were submitted to the court below as attachments to a summary judgment motion.  It appears from the record that the Order was entered to facilitate pre-trial discovery."))

Scentsy has not articulated sufficient reasons why its memoranda and affidavits should be sealed, nor has Scentsy sought the Court's permission to file under seal.  Reshare has not sought the Court's permission to file under seal either.  Moreover, the Court will not issue its Report and Recommendation under seal despite its reference to provisions of the confidential Settlement Agreement and the language of some of its provisions because the Court finds concerns for public access outweigh any confidentiality concerns of the litigants.  Accordingly, all Scentsy's summary judgment briefs and the Court's resultant Report and Recommendation are recommended to be unsealed.  The Exhibits filed under seal by both Scentsy and Reshare will remain under seal.

## IV.  RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Reshare's Motion for Summary Judgment [Doc. No. 39] be **GRANTED**; and

2. Scentsy's Motion for Summary Judgment [Doc. No. 44] be **DENIED**.

Dated: October 21, 2013

*s/ Steven E. Rau*
STEVEN E. RAU
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by **November 4, 2013**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.